[No. 20371. Department Two. March 15, 1927.]

ROBERT LARSON, *Respondent,* v. SOUTH PRAIRIE LUMBER COMPANY, *Appellant.*[1]

[1] BOUNDARIES (13)—ESTABLISHMENT—EVIDENCE—SUFFICIENCY. A finding by a jury that a government corner is lost, and was not located at a stone placed by a witness, 400 feet from its true or proper location .thirty years after the original survey, and twenty-six years before the trial of the case, where the witness merely testified that he had found what he took to be the government post and bearing tree, and eight years later placed the stone there; since the jury was not bound to accept his opinion as conclusive.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered June 5, 1926, upon the verdict of a jury in favor of the plaintiff, in an action for trespass. Affirmed.

*Hayden, Langhorne & Metzger,* for appellant.

*A. O. Burmeister,* and *J. H. Gordon,* for respondent.

PARKER, J.—The plaintiff Larson seeks recovery of damages from the defendant lumber company for an alleged trespass by it upon land owned by him and removal of timber therefrom. A trial upon the merits in the superior court for Pierce county sitting with a jury resulted in verdict and judgment awarding recovery to Larson, from which the lumber company has appealed to this court.

[1]Reported in 253 Pac. 1076.

The lumber company owns lot 2, being the fractional southwest quarter of the northwest quarter of section 19, township 19 N., R. 6 E. W. M., in Pierce county. Larson owns lot 3, being the fractional northwest quarter of the southwest quarter of the same section. These are designated as lots upon the government survey plat because they adjoin the west boundary of the township where deficiency or excess in area of the regular legal subdivisions of sections of townships is taken care of. These lots are noted on the government survey as containing 39.57 acres and 39.58 acres, respectively. The west end of their common boundary, as will be readily noticed, is at the quarter section corner on the west boundary of the section and township.

It is claimed in behalf of Larson that the original government location of the quarter section corner monument has become lost; and that therefore the common boundary of the lots must be determined as running on a line east from a point where the quarter section corner is presumed to be located; that is, east from a point equi-distant between the northwest and southwest corners of the section. It is claimed in behalf of the lumber company that the original government location of the quarter section corner has not become lost, but that it is at the so-called "Conant Stone," which is somewhat more than three hundred feet south and one hundred feet west of the quarter section corner, as claimed by Larson. The original government location of the southwest corner of the section is known. The original government location of the northwest corner of the section is lost. The original government location of the quarter section corner one-half mile further north, that is, the west quarter section corner of section 18, is known. The location of

the quarter section corner claimed by Larson as the west end of the common boundary of the lots in question, to wit, his north boundary, as claimed by him, was ascertained by measurements from the known location of the southwest corner of the section to the known location of the quarter section corner one and one-half miles north on the west boundary of section 18, and assigning the southerly one-third of that whole distance as the correct location of the quarter section corner on the west boundary of section 19; that is, as the west end of the common boundary between the lots here in question, being Larson's north boundary.

The lumber company cut and logged the merchantable timber off of the land south of this line and north of a line running east from the Conant stone, claiming that land as being in its lot 2, Larson claiming that land as being in his lot 3. One Conant, a witness for the lumber company, testified to having found in 1901 what he took to be the remains of the original government quarter post and a bearing tree near it at the point somewhat more than three hundred feet south and one hundred feet west of the theoretical quarter corner as claimed by Larson; and that he, later in 1908, placed there a new post with a stone by it, marking the stone "¼." This is the so-called "Conant Stone," which is claimed by the lumber company to mark the original government location of the quarter corner. This stone has remained there ever since that time. Several witnesses for Larson testified to having, on several occasions since the placing of the Conant stone, made thorough search for evidence upon the ground in the neighborhood where the quarter corner would at all likely be found, and that no such evidence has been found indicating in the slightest degree where the original monument marking the quarter corner was

placed by the government survey, though the Conant stone was found to be as he had placed it.

The jury, accompanying its general verdict in favor of Larson, answered special interrogatories, as follows:

"1. Did Mr. Conant set a stake as marking the quarter corner of the west line of section 19, township 19 north, range 6 east, W.M., in April, 1908? Answer. Yes.

"2. If he did, was the stake so set by him located where the original quarter corner stake was established by the original governmental survey? Answer. No."

[1] The principal contention here made in behalf of the lumber company is that the Conant stone was so conclusively proven to be at the original government location of the quarter corner that the trial court erred in refusing to adopt that as the western end of the common boundary of the two lots in question, as a matter of law, and in accordingly refusing to direct the jury to return a verdict for the lumber company. The argument is, in substance, that Conant's testimony is conclusive on that question since there was no direct contradiction of his testimony as to what he saw upon the ground in 1901, over twenty-six years before the giving of his testimony upon the trial of this case. We do not think that it can be so decided as a matter of law. Conant's conclusion that that was the original location of the quarter corner by the United States government survey was, of course, only his opinion. That survey was made approximately thirty years before he viewed that location. What he there found, according to his testimony, was an old post and a tree which he concluded was the original government quarter post and one of the bearing trees having to do with the location of that place as the quarter corner. This does, of course, furnish ground for arguing that Conant had thus discovered the original location of the

quarter corner at that place, but we think the jury was
not bound to so find. The credit to be given to Con-
ant's testimony, and more especially his conclusion as
to that being the original location of the quarter corner,
was for the jury to decide as a question of fact. The
jury might well have believed that Conant was mis-
taken in his conclusion, in view of the fact that that
location was approximately four hundred feet from
the true theoretical location of that quarter section
corner; that Conant was testifying from memory only
as to what he actualy saw, over twenty-six years before,
as to the condition of that post and bearing tree and the
markings thereon. The evidence does not show any
physical possession of either tract; nor does the evi-
dence show any acquiescing by the respective owners
of either claimed location being the correct one.
Indeed, there seems to have been for years conflicting
claims in that behalf. The evidence is overwhelmingly
to the effect that no other place upon the ground within
a radius of four hundred feet or more of the point on
the section line where the quarter corner is presumed
to have been located shows any evidence of any original
location of that quarter corner upon the ground by the
government survey, apart from what Conant tells us
he saw in 1901 at the place where we now find the Con-
ant stone. It seems plain to us that it cannot now be
held, as a matter of law, that the evidence does not sup-
port the jury's finding which amounted to this, that the
Conant stone does not mark the location of the quarter
section corner as made by the government survey, and
that its original government location upon the ground
has become lost and therefore must be taken to be at
the place where the law presumes it to be; that is, at
the place claimed by Larson as the western end of the
north boundary of his lot 3.

Contention is made that in any event the evidence does not support the award made by the verdict of the jury as to amount; that is, that the award is excessive. This presents a question of fact only, as we view this case. The award was well within the evidence touching both the question of the amount of the timber removed by the lumber company from Larson's land and its value. We do not see our way clear to disturb the verdict and judgment upon the ground of it being ·excessive.

This case, to our minds, presents no problem worthy of serious consideration here, other than as to whether or not the evidence supports the verdict. We conclude that the judgment must be affirmed. It is so ordered.

MACKINTOSH, C. J., TOLMAN, BRIDGES, and ASKREN, JJ., concur.